## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**SHELLEY MARTINEZ,**

       **Plaintiff,**

**vs.**                               **No. CIV 04-0381 DJS/ACT**

**STATE OF NEW MEXICO, NEW**
**MEXICO DEPARTMENT OF LABOR;**
**JACKIE INGLE, Division Director,**
**Administrative Services Division, New Mexico**
**Department of Labor, individually; HOWARD**
**WILLIAMS, Deputy Division Director,**
**Administrative Services Division, New Mexico**
**Department of Labor, individually; JOEL**
**KORNGUT, Bureau Chief, Human Resources Bureau,**
**New Mexico Department of Labor, individually;**
**ROBERT CASWELL INVESTIGATIONS,**
**INC., a New Mexico Corporation; ROBERT CASEY,**
**individually and in his capacity as investigator, Robert**
**Caswell Investigations, Inc.; KARL WIESE, individually**
**and in his capacity as investigator, Robert Caswell**
**Investigations, Inc.; and LEROY LUCERO, individually**
**and in his capacity as investigator, Robert Caswell**
**Investigations, Inc.,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on **(1)** the RCI Defendants'(Robert Caswell

Investigations, Inc., Robert Casey, Karl Wiese, and Leroy Lucero) Motion for Partial Summary

Judgment on Whether They Are State Actors **[Doc. No. 57]**, filed October 26, 2004; **(2)** the RCI

Defendants' Motion to Strike Plaintiff's Response to the RCI Defendants' Motion for Partial

Summary Judgment on Whether the RCI Defendants' (sic) were State Actors **[Doc. No. 77]**, filed

December 1, 2004; **(3)** the RCI Defendants' Motion for Partial Summary Judgment on Plaintiff's

Equal Protection and 42 U.S.C. § 1981 Claims **[Doc. No. 64]**, filed November 5, 2004; **(4)**

Defendants Robert Caswell Investigations, Inc., Robert Casey, Karl Wiese, and Leroy Luceros's

Motion to Amend Third-Party Complaint **[Doc. No. 13]**, filed June 17, 2004; **(5)**

Plaintiff/Counter-Defendant Shelley Martinez' and Third-Party Defendant Dennis W. Montoya's

Motion and Memorandum to Dismiss Counterclaim and Third-Party Complaint for Lack of

Subject Matter Jurisdiction and for Failure to State a Claim **[Doc. No. 23]**, filed July 18, 2004;

and **(6)** Plaintiff/Counter-Defendant Shelley Martinez' and Third-Party Defendant Dennis W.

Montoya's Partially Unopposed Motion and Memorandum to Stay Proceedings Pending

Resolution of Their Motion to Dismiss Counterclaim and Third-Party Complaint **[Doc. No. 56]**,

filed October 23, 2004.

Defendants Robert Caswell Investigations, Inc., Robert Casey, Karl Wiese, and Leroy

Lucero (collectively, the "RCI Defendants") move the Court for an order granting partial

summary judgment on Count I of Plaintiff's Complaint.[1]  In her Complaint, Plaintiff alleges the

RCI Defendants violated her equal protection rights and requests remedies for these alleged

violations under §§ 1983 and 1981.  Plaintiff also requests relief for these alleged violations under

Title VII against the New Mexico Department of Labor (NMDOL).  The RCI Defendants

contend they are not state actors and thus Plaintiff's equal protection claims under §§ 1983 and

1981 cannot stand.  The Court will address the RCI Defendants' partial summary judgment

---

[1] Since the filing of this motion and pursuant to Rule 41(a)(1)(ii) of the Federal Rules of
Civil Procedure, Plaintiff filed a Stipulation of Voluntary Dismissal **[Doc. No. 91]**, dismissing  her
claims against Defendants Leroy Lucero and Karl Wiese.

motions first since the Court's rulings in these motions will impact the outcome of the remaining motions.

As a preliminary matter, the Court will deny the RCI Defendants' Motion to Strike Plaintiff's Response to the RCI Defendants' Motion for Partial Summary Judgment on Whether the RCI Defendants' (sic) were State Actors.  The RCI Defendants contend Plaintiff filed her response **three** days late and failed to comply with Local Rule 56.1.  Specifically, the RCI Defendants claim Plaintiff did not dispute the RCI Defendants' "statement of undisputed facts." Accordingly, the RCI Defendants argue the Court "should strike plaintiff's response and deem that the plaintiff consented to the RCI Defendant's (sic) Motion."  RCI Defs.' Mot. to Strike at 3. Plaintiff counters that the delay was *de minimus* and did not prejudice the RCI Defendants. Additionally, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Plaintiff requests the Court delay ruling on the RCI Defendants' motion until discovery is completed.[2]

Although Plaintiff's response is untimely, the RCI Defendants were not prejudiced by Plaintiff filing her response **three days** late.  The RCI Defendants are correct that "[t]he failure of

---

[2] In her response to the RCI Defendants' motion for partial summary judgment and pursuant to Rule 56(f) of the Federal Rule of Civil Procedure, Plaintiff requested the Court allow her "the opportunity for additional discovery before being required to respond in detail to the various theories outlined in Caswell's memorandum brief."  Pl.'s Resp. to Defs.' Mot. for Partial Summ. J. as to her Equal Protection and Section 1981 Claims at 4.  Plaintiff contends she "has had the opportunity to obtain only limited discovery."  *Id.*  Specifically, Plaintiff contends she has not had the opportunity to depose the RCI Defendants or the NMDOL Defendants.

The RCI Defendants counter that Plaintiff has made no discovery requests in over three months and has not tried to schedule any depositions.  Moreover, the RCI Defendants contend the parties Plaintiff seeks to depose will not have any new information.  The Court has reviewed the submissions by the parties and finds that additional discovery would not change the undisputed material facts the Court relied upon to grant the RCI Defendants' motion for partial summary judgment as to Plaintiff's §§ 1983 and 1981 claims.  Accordingly, Plaintiff's request for additional discovery under Rule 56(f) is denied.

a party to file and serve a response in opposition to a motion within the time prescribed for doing

so constitutes consent to grant the motion." D.N.M.LR-Civ.7.1(b). However, "[s]ummary

judgment is not proper merely because a [Plaintiff] fail[s] to file a response." *Reed v. Bennett*,

312 F.3d 1190, 1194 (10th Cir. 2002). In the case of a nonmovant failing to respond in

opposition to a motion, the Court "may not grant the motion without first examining the moving

party's submission to determine if it has met its initial burden of demonstrating that no material

issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id.*

at 1195. In this case, the Court will examine the submissions of the parties in making its ruling.

Accordingly, the RCI Defendants' motion to strike is denied.

## II.  Standard of Review

The Court will grant summary judgment when there is no genuine issue as to any material

fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant

carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H.

Kress & Co.*, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an

absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986). Once the movant meets its burden, the burden shifts to the non-movant to

demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus.,

Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In making its summary judgment determination, the

court looks at the pleadings and documentary evidence in the light most favorable to the non-

movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and

the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v.

City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991). However, once the burden shifts to

the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated. *Celotex Corp.*, 477 U.S. at 322. The Court will consider the RCI Defendants' motions for partial summary judgment in light of these standards.

## II. Factual Background

On March 3, 2003, the NMDOL contacted Robert Casey to investigate allegations that Sylvana Luciani, an administrative secretary, was abusing leave. Casey Decl. ¶ 7. Robert Casey is the owner of Robert Caswell Investigations, Inc. (RCI) and an investigator.[3] The RCI investigators also investigated Bureau Chief Judith Sizemore because she was Ms. Luciani's direct supervisor. The investigation of Ms. Sizemore led to the RCI investigators interviewing other individuals under Ms. Sizemore's supervision. The RCI investigators also scrutinized the employees' records.

On March 13, 2003, Karl Wiese, an RCI investigator, interviewed Plaintiff, an African-American, because she was under Ms. Sizemore's supervision. Wiese Decl. ¶ 8, Ex. A (Interview of Shelly Martinez). Pursuant to RCI policy, Bureau Chief Ron Gutierrez witnessed the interview

---

[3] RCI is a licensed and bonded investigation company under contract with the State of New Mexico's Risk Management Division. According to RCI, its relationship with the State of New Mexico is one of independent contractor. Additionally, the Risk Management Division does not guarantee the assignment of any cases or payment under the contract. Casey Decl. ¶ 1, Ex. A (Contract between Risk Management Division and RCI).

since Mr. Wiese, a male, was interviewing a female employee.  Casey Decl. ¶ 4.  At this interview,

Mr. Wiese asked Plaintiff to explain "certain discrepancies" with electronic card swipe data and

her time sheet records.  Wiese Decl. ¶ 5 (Decl. in Supp. of Mot. for Partial Summ. J. on Pl.'s

Equal Protection and 42 U.S.C. § 1981 Claims).  Defendant Casey also pulled a random sample

of NMDOL employees' time records for employees under Judith Sizemore's supervision.  Casey

Decl. ¶ 6.

On March 17, 2003, the NMDOL requested RCI investigate allegations that another

NMDOL employee, Glen Young, was falsifying overtime and abusing leave.  Lucero Decl. ¶ 8.

During RCI's investigation of Mr. Young, RCI investigators interviewed the following individuals

to evaluate the allegations against Mr. Young: (1) Rod Boteihlo, a database administrator under

Plaintiff's supervision and who worked in the same office as Mr. Young; (2) Manny Montoya,

Information Systems Manager for the NMDOL and the individual who told Robert Casey to

investigate Mr. Young for possible falsification of his time keeping records; (3) Plaintiff,

supervisor for both Mr. Young and Rod Botehlo; (4) Glen Young, a database analyst for the

NMDOL and also under Plaintiff's supervision; and (5) Ken Martinez, Plaintiff's husband,  who

Plaintiff reported had information about Mr. Young's work attendance.

On March 18, 2003, Robert Casey interviewed Plaintiff.  The focus of the interview was

"[Plaintiff's] knowledge of Glen Young's attendance and overtime at the NMDOL."  Casey Decl.

¶ 9, Ex. B at RCI 00109.  Mr. Lucero witnessed the interview.  On that day, Mr. Casey provided

Plaintiff with three dates, January 29, 30, and 31, 2003.  According to Mr. Casey, on those days,

Mr. Young left the office at 3:36 p.m., 3:33 p.m., and 2:30 p.m., respectively.  These times were

documented by his magnetic employee swipe card record.  Plaintiff was on Family Medical Leave

from January 28, 2003 to March 10, 2003.  Mr. Casey informed Plaintiff that Young was not at the NMDOL on many of the days when she was gone.  Plaintiff explained that Mr. Young may have piggybacked into the building and was thus not credited for the actual time he spent at the NMDOL.  However, Mr. Casey informed her that Manny Montoya and Rod Boteihlo reported Mr. Young was rarely in the office for an eight-hour day during the time she was gone.  Plaintiff then referred Mr. Casey to Ken Martinez since he worked in the same office area as Mr. Young and could provide information as to Mr. Young's work attendance and habits.

On March 21, 2003, Mr. Casey and Rick Foley met with Plaintiff in her office.  Casey Decl. ¶10, Ex. B at RCI 00109.  Mr. Casey directed Plaintiff to review several work days in February and March, days in which Mr. Young claimed an inordinate amount of overtime, and provide him with a  memorandum outlining her findings.  Paula Forney participated via telephonic conference.  Later that afternoon, Mr. Casey held a conference call with Howard Williams, Plaintiff, and Josephine Owens.  At that time, Mr. Casey narrowed the dates he wanted Plaintiff to research to six days.  Mr. Casey asked Plaintiff to meet with Josephine Owens since she was researching the dates on the system logs.  Mr. Casey also asked Plaintiff to deny Mr. Young access to the system and not allow him to assist her in the analysis.

On April 1, 2003, Mr. Casey interviewed Plaintiff for a second time.  Casey Decl. ¶ 11. Yvonne Gonzales, a state employee, witnessed the interview.  Mr. Casey questioned Plaintiff about her noncompliance with his March 21, 2003 request for information and his directive to deny Mr. Young access to the system.

RCI contends that after the NMDOL's initial request to investigate Ms. Luciani, the NMDOL did not direct RCI to investigate any other employees.  That decision was left to RCI's

professional judgment.  RCI investigators "interviewed and investigated whites, Hispanics,

African-Americans, Native Americans, males, and females, among others."  Casey Decl. ¶25.

Additionally, RCI maintains that "[a]t no time were RCI employees requested by the NMDOL, to

harass, intimidate, or threaten [Plaintiff] or to treat her differently from other NMDOL employees.

Casey Decl. ¶ 16, Wiese Decl. ¶ 13, Lucero Decl. ¶ 13.  RCI maintains that after it submitted its

report to the NMDOL, RCI and its employees were not involved in any of the NMDOL's

decisions, including any actions taken against any NMDOL employee named in its report.

Significantly, RCI contends it and its employees "did not have authority to reprimand Ms.

Martinez or to affect Ms. Martinez' status as an employee with the State. *Id.*

RCI further asserts that Plaintiff currently does not have any letter of reprimand or "letter

of disappointment" in her file as a result of the investigation.  According to RCI, Glen Young, a

white male employee was terminated as a result of the investigation.

### III.  Discussion

### A.  Motions for Partial Summary Judgment

The Fourteenth Amendment to the United States Constitution provides in part: "No state

shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to

any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, §

1.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding for redress.

8

42 U.S.C. § 1983.  To state a cause of action under 42 U.S.C. §1983 for an alleged violation of the Fourteenth Amendment, the challenged action must constitute state action.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930-32 (1982).  When a constitutional claim is asserted against private parties, the private parties' conduct constitutes state action if it is "fairly attributable to the state.'"  *Id.* at 937.  To find a private individual's conduct fairly attributable to the state two conditions must be met:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible.  Second, the private party must have acted together with or . . . obtained significant aid from state officials or engaged in conduct otherwise chargeable to the State.

*Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996)(*quoting Wyatt v. Cole*, 504 U.S. 158, 162 (1992)).

In *Gallagher v. "Neil Young Freedom*," 49 F.3d 1442 (10th Cir. 1995), the Tenth Circuit discussed in detail what constitutes action under "color of law" by private parties.  In conducting a state action analysis, the *Gallagher* Court discussed four tests set forth by the Supreme Court to determine whether private parties should be deemed state actors, i.e., the public function test, the nexus test, the symbiotic relationship test and the joint action test.  The *Gallagher* Court acknowledged that the application of the state action doctrine was "one of the more slippery and troublesome areas of civil rights litigation."  *Id.* at 1447.  The *Gallagher* Court then reviewed the Supreme Court's approach to the state action doctrine, stating:

> The Court has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case.  In some instances, the Court has considered "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  The Court has also inquired whether the state has "so far insinuated itself into a position of interdependence" with the private party that there is a "symbiotic relationship" between them.  In addition, the

> Court has held that if a private party is "'a willful participant in joint activity with the State or its agents,'" then state action is present.  Finally, the Court has ruled that a private entity that exercises "powers traditionally exclusively reserved to the State" is engaged in state action.

*Id.*

In this case, Plaintiff contends the RCI Defendants "were clearly willing joint participants with the state or its agents."  Pl.'s Resp. at 12.  Under this test, the Court must "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Id.* at 1453.  Plaintiff contends Howard Williams, the Deputy Director for the Administrative Services Division at the NMDOL, informed her during a meeting in his office "that anything Mr. Casey said or directed her to do he had the same authority as that of the Cabinet Secretary."  Pl.'s Resp. to Defs.' Interrog. No. 3.

According to Plaintiff, on March 19, 2003, Robert Casey came to her office and "in a very aggressive manner" directed her not to allow Glenn Young to work anymore overtime.  *Id.* Plaintiff then spoke with Judith Sizemore regarding Robert Casey's authority to give her orders. Ms. Sizemore advised Plaintiff that Robert Casey also had directed her "in an aggressive manner" not to allow Mr. Young to work anymore overtime.  *Id.*  Ms. Sizemore and Plaintiff were concerned about Robert Casey's "authority as an investigator to direct them on agency business and personnel."  *Id.*  Ms. Sizemore asked Plaintiff to contact Howard Williams and discuss their concerns.

On March 19, 2003, at approximately 3:18 p.m., Plaintiff e-mailed Mr. Williams.  *See* Pl.'s Resp., Attach. A.  In this e-mail, Plaintiff informed Mr. Williams about Robert Casey's directive regarding not allowing Glenn Young to work anymore overtime.  Plaintiff posed the following

question, "Is he authorized to make this decision?" *Id.*  On March 20, 2003, at approximately 9:17 a.m., Judith Sizemore sent Plaintiff the following e-mail.

> Jackie and Howard spoke with Bob Casey this morning with regard to you and I having understood him to say, in two different conversations, that Glenn Young was not to work any overtime during this pay period.  Bob Casey told Jackie and Howard that this was not what he had said, but rather that **he had instructed you and I to allow Mr. Young to work the overtime**– **but to insure that all OT was extremely well documented.**

Pl.'s Resp., Attach. B (emphasis added).  These e-mails corroborate Plaintiff's contention that Mr. Williams, a high level official with the NMDOL, had given Robert Casey broad authority to conduct the investigation and to give directives to NMDOL employees.

Plaintiff raises two claims against the private defendants.  First, it appears that Plaintiff is alleging that Robert Casey exercised his broad authority during the investigative process in a discriminatory manner.  Specifically, Plaintiff alleges "she was singled out for excessively hostile treatment in connection with the investigation into charges of excessive overtime use by a subordinate and allegations that she abused her own time and attendance."  Pl.'s Resp. at 23.  Plaintiff also contends, "she was singled out and treated in a substantially and detrimentally different manner than other employees."  *Id.*  Plaintiff claims "[t]his is analogous to a selective prosecution claim."  *Id.*[4]

---

[4] In her Complaint, Plaintiff alleges that "[d]uring the course of the 'investigation,' [she] was treated in a significantly detrimentally different manner from others similarly situated, and in particular males and **whites**, thereby depriving her of equal protection of the law."  Compl. at ¶ 38.  In addition, Plaintiff also alleges in her Complaint that "[s]aid denial of equal protection was motivated in whole or in substantial part by Plaintiff's gender, female, and **race, African-American**."  *Id.* at ¶ 41.  Plaintiff appears to allege that defendants denied her equal protection of the law based on her race by treating her differently than similarly situated whites.  Racial and national origin discrimination can violate the Fourteenth Amendment right to equal protection of the law and state a cause of action under 42 U.S.C. § 1983.  *Ramirez v. Dep't of Corrections*, 222 F.3d 1238, 1243 (10th Cir. 2000).  Section 1981 also provides a remedy against employment discrimination on the basis of race.  *Id.*

To prevail on her equal protection claim under this theory, Plaintiff must show that (1) the RCI Defendants singled her out for persecution due to some animosity and were out to get her for reasons wholly unrelated to the investigation, and (2) in the course of the investigation she was treated differently than those similarly situated.  *MIMICS, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005).  These allegations, if proven, would constitute state action because the alleged constitutional violation would be attributable to the State.[5]

Second, Plaintiff appears to allege that the RCI Defendants took part in the decision to reprimand her, a decision Plaintiff maintains also violated her equal protection rights.  *See* Pl.'s Resp. to Def. RCI's Mot. for Partial Summ. J. as to Her Equal Protection and Section 1981

_____

However, Plaintiff failed to address these allegations in her response.  Moreover, Plaintiff does not dispute that the RCI Defendants interviewed and investigated Hispanics, African-Americans, Native Americans, males, and other females.  Undisputed Fact No. 26.  Notably, Plaintiff's own perception of the investigation was that other employees, including whites, felt as intimidated and fearful as she felt.  Because Plaintiff failed to present evidence in support of her allegations that defendants denied her equal protection of the law based on her race by treating her differently than similarly situated whites, Plaintiff failed to show a constitutional violation under this theory of her case.

[5] On January 28, 2005, the Honorable James A. Parker entered an Order, granting the RCI Defendants' Motion for Partial Summary Judgment on Whether RCI Defendants are State Actors in the action brought by Judith Sizemore against the RCI Defendants.  *Sizemore v. State of New Mexico, et al*, CIV No. 04-0272 JP/DJS.  In that case, Plaintiff failed to file a response in opposition to the RCI Defendants' motion for partial summary judgment.  Pursuant to Local Rule 7.6(a), Judge Parker deemed Plaintiff to have consented to the granting of the motion.  Nonetheless, Judge Parker considered the partial summary judgment motion on the merits and found that the RCI Defendants were "independent contractors who did not conspire or act in concert in any way with the State of New Mexico and did not follow any policy or procedure of the State of New Mexico when the RCI Defendants performed independent contractual obligations."  January 28, 2005 Order at 3.

In this case, Plaintiff submitted evidence in support of her contention that the RCI Defendants were state actors.  However, this Court found that Plaintiff failed to show a constitutional violation by the RCI Defendants and did not have to reach the issue of whether RCI Defendants were state actors.

Claims ("Morever, despite their protestations that they are innocent of participation in decisions involving the disposition of charges against Ms. Martinez, it is clear from both accounts of the events in question that RCI and the RCI Defendants played key roles in directing the view that the NMDOL took of Ms. Martinez and her work duties.").  In other words, Plaintiff alleges the RCI Defendants conspired with NMDOL officials to reprimand her in a discriminatory manner.  Again, these allegations, if proven, would constitute state action because the alleged constitutional violation would be attributable to the State.

Viewing the pleadings and documentary evidence in the light most favorable to the non-movant, the Court finds that Plaintiff's claims against these private actors cannot stand.  Plaintiff failed to present evidence to show a constitutional violation by these defendants.  In terms of her allegations that the RCI Defendants singled her out and treated her differently than others similarly situated, Plaintiff's statements in her Response to Proposed Disciplinary Action belie her allegations.

It is undisputed that the RCI Defendants interrogated Plaintiff because Judith Sizemore came under scrutiny and Plaintiff worked under Ms. Sizemore's supervision.  The RCI Defendants also interrogated and investigated other employees under Ms. Sizemore's supervision, e.g., Stan Valdez, Mike Broward, and Virginia Baca.  Moreover, the RCI Defendants pulled a random sample of NMDOL employees' time records for employees under Ms. Sizemore's supervision.  The RCI Defendants also questioned other supervisors regarding the time records for employees under their supervision.  The RCI Defendants interviewed and investigated whites, Hispanics, African-Americans, Native Americans, males and females.  Defs.' Undisputed Fact No. 26.

Significantly, in her Response to Proposed Disciplinary Action, Plaintiff stated "[t]hose who were investigated felt intimidated and threatened." Defs.' Ex. 1, at 4. Plaintiff opined that "the manner in which the investigation and interviews were conducted was disruptive." *Id.* at 6. Plaintiff described the investigators as "alternately antagonistic, condescending and intimidating." *Id.* Plaintiff also noted, "My newest employee, Sathish Adimoorthy, among others, came to me fearful for his job and the investigation." *Id.* at 5. Plaintiff further opined, "[i]f the goal of the investigation and the interviews was to terrorize and intimidate the bureau, I would say it was achieved." *Id.* Plaintiff also stated, "I have been informed that this investigation started because a complaint or complaints about misconduct were lodged against Sylvana Luciani. What has resulted has been a grossly unfair attempt to personally and professionally smear Judith Sizemore and anyone who is close to Judith. It has been reported to me that Ms. Ingle said that she was going to take down Judith Sizemore and anyone who reports directly to her." *Id.* at 12. Plaintiff also opined, "for the purpose of this investigation, careers are being ruined and reputations maligned, based upon the use of unofficial records." *Id.* at 14.

Additionally, on March 25, 2003, Plaintiff e-mailed Governor Bill Richardson's Constituent Services Office regarding the investigation. Pl.'s Resp., Attach. A. In the e-mail, Plaintiff made the following relevant statements: (1) "Nearly 1/4 of the MIS bureau is being targeted for investigation." and (2) "The investigation has nearly everyone in MIS terrified. No one feels safe to even ask questions. These Communist state tactics are breeding distrust and fear." *Id.*

The foregoing statements indicate Plaintiff perceived the RCI investigation as intimidating and threatening. However, nothing in Plaintiff's Response to Proposed Disciplinary Action

indicates she believed the RCI investigators singled her out or treated her differently from other employees during the investigation.  From Plaintiff's account, other employees felt intimidated and terrorized.  Plaintiff's statements paint a picture of an investigation that, although poorly handled, was allegedly equally antagonistic and intimidating toward all employees that were interviewed and/or investigated.  Plaintiff also perceived that Ms. Sizemore, rather than Plaintiff, was the target of the investigation.  Accordingly, the Court finds that Plaintiff failed to present evidence showing the RCI Defendants' conduct toward her during the investigation was motivated by spite or animosity or was a "spiteful effort to get her for reasons wholly unrelated" to the investigation or that she was treated differently than other employees who the RCI Defendants interviewed and/or investigated.

Plaintiff also alleges the RCI Defendants conspired with the NMDOL officials to reprimand her in a discriminatory manner.  In her Response to Proposed Disciplinary Action, Plaintiff accuses Jackie Ingle, Division Director Employment Security Division with the NMDOL, of "unfairly targeting [her] for misconduct to suit her own purposes."  Defs.' Ex. 1 at 1.  Ms. Ingle had charged Plaintiff with eight counts of misconduct based on RCI's investigation and ultimate report.  In her response, Plaintiff makes the following relevant allegations:

1.  Failure to Follow Department Procedures Flexing Schedules

Plaintiff lists several **male** individuals who are on a "flex time" schedule yet have not filed the required paperwork.  Plaintiff then states, "Consistent with current charges against the Department, all of the foregoing are males, **while I am a female**.  **It is clear that I am being unfairly singled out for this transgression**.  To the extent that I have committed any transgression, it was an honest mistake on my part, which I have rectified."  Defs.' Ex. 1 at 1. (emphasis added).  Plaintiff then claims Mr. Williams has followed an "unusual 'flex' schedule" and requests information regarding his compliance with flex schedule policy.

2.  Failure to Prove an 8-Hour Work Day

Plaintiff claims she was asked about eight specific dates during December and January in which she allegedly did not work an eight hour day but was paid for eight hours of work.  Plaintiff had no evidence to prove that she had worked those specific days but stated that "[l]ack of evidence does not indicate I was absent."  *Id.* at 2.  Plaintiff explains she "piggy backs" into the building, as do most of NMDOL employees.  In support of this explanation, Plaintiff contends Ms. Ingle "even admitted to Stan Valdez that the security guard often opens the door for her in the morning and that her arrival time could be misrepresented." *Id.* at 3.  Again, Plaintiff states, "**Consistent with other females who have been targeted for this 'infraction**, **I am being treated extremely unfairly**." *Id.* (emphasis added).

Plaintiff also lists a **male employee** that she claims "almost never badges in or out," yet "[no] one has ever reprimanded him for not putting in a full day's work." *Id.*  Plaintiff claims the NMDOL "does not have a policy stating an employee must swipe their badge each day and every

time they enter or exit the building." *Id.*  Plaintiff also requests the "card swipe" records of

specific **male employees**.  *Id*. at 4.

3.  <u>Admonished– Speaking Out About Investigation & Admitting the Use of a Camera Detector</u>

Plaintiff claims she was not the only person talking about the investigation.  Plaintiff states,

"**If I am going to be punished for talking, then I believe nearly everyone in the bureau**

**should be punished.  I am not the <u>only manager</u> who talked or initiated discussion**." *Id.* at 5

(emphasis added).  As to her use of a camera detector, Plaintiff requests the video records

obtained through cameras she claims were placed by RCI in the Tiwa Building.

5.  <u>Failure to Supervise Glenn Young & Assisting Mr. Young in Producing Thousands of Docs.</u>

Plaintiff claims **other supervisors**, who were in a better position to know whether Mr.

Young was entitled to the overtime he requested, approved and signed Mr. Young's overtime

requests.  Plaintiff contends she had no reason to question his request because she had just

returned to work after being out on medical leave for approximately one month.  Plaintiff lists Art

Martinez, Howard Williams, and Secretary Chino as supervisors who also approved Mr. Young's

overtime.

8.  <u>Being "Evasive" Under Questioning From Investigators</u>

Plaintiff states:

> **I have been personally singled out** and accused of misconduct that has largely been
> fabricated to look damaging.  Apart from tardiness, which I have acknowledged, **I have not
> done anything that the other managers in the bureau haven't done**.  **Mike Broward** takes
> off for appointments during the day quite frequently and makes up his time.  **John Hudson**
> works late into the evening and flexes his schedule the next day and nothing is said to him.
> The people working under **Manny Montoya** were making most of the requests for Glenn
> Young's overtime.  If there was a concern, why wasn't Mr. Montoya addressing it?  With the
> exception of the two managers I mentioned above, I talked with or overhead **each manager
> including Terry Othick and Art Martinez have conversations about the investigations**.
> **Why am I being singled out**?

17

*Id.* at 12 (emphasis added).  Although Plaintiff alleges she is being accused of misconduct that "has largely been fabricated to look damaging," she does not list what misconduct is "fabricated." Instead, she admits to being tardy and justifies other misconduct by pointing to others who have engaged in similar "misconduct."  Plaintiff also gives her reasons for her tardiness.

At the conclusion of her Response to Proposed Disciplinary Action, Plaintiff makes two observations.  First, Plaintiff alleges Mr. Williams has violated the "flex time" policy and then requests his leave records for the past two years.  Second, Plaintiff alleges Mr. Williams conducts "real estate related business on his cellular telephone while 'on the clock' for New Mexico Department of Labor and on-site at the Tiwa Building."  *Id.* at 13.   Plaintiff also requests Mr. Williams' cellular telephone records for  the past two years.

Accepting Plaintiff's statements in her Response to Proposed Disciplinary Action and her response to Defendants' Interrogatory No. 3 as true solely for the purpose of addressing the RCI Defendants' Motion for Partial Summary Judgment on Plaintiff's Equal Protection and 42 U.S.C. § 1981 Claims, the Court finds that Plaintiff failed to present evidence showing the RCI Defendants played any role in the decision to reprimand her.  Although Ms. Ingle may have relied on the report submitted by RCI in issuing her letter of reprimand, this does not show that the NMDOL officials and the RCI Defendants "acted in concert" to deprive her of her constitutional rights as alleged in her Complaint.  Moreover, even if Plaintiff were to establish a constitutional violation by the NMDOL Defendants, she failed to present evidence showing the RCI Defendants acted in concert with the NMDOL Defendants to effectuate that constitutional violation.

Accordingly, the Court will grant the RCI Defendants' Motion for Partial Summary Judgment on Plaintiff's Equal Protection and 42 U.S.C. § 1981 Claims.

### B.  Motion to Dismiss Counterclaim and Third-Party Complaint

On May 21, 2004, the RCI Defendants filed a counterclaim against Plaintiff **[Doc. No. 4]** and a Third Party Complaint against Dennis Montoya **[Doc. No. 5]**, Plaintiff's counsel, for malicious abuse of process.  On July 18, 2004, Plaintiff and her attorney filed a motion to dismiss the counterclaim and Third-Party Complaint on the grounds that the Court lacks subject matter jurisdiction and for failure to state a claim.

The elements of malicious abuse of process are as follows: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. *Valles v. Silverman*, 2004-NMCA-019, ¶ 7, 135 N.M. 91.  Under this tort, "there must be a misuse of process by the defendant beyond the mere initiation of proceedings against the plaintiff."  *Weststar Mortgage Corp. v. Jackson*, 2003-NMSC-002, ¶ 5, 133 N.M. 114.  Requiring a misuse of process, in addition to the mere initiation of proceedings, "serves to prevent a chilling effect on claims well-founded in fact and law and asserted for the legitimate purpose of redressing a grievance."  *Id.*

In their counterclaim, RCI Defendants allege:  "With absolutely no belief in the validity of the allegations of the claim and having suffered no damages, it is on information and belief that Martinez is seeking to maliciously abuse the power of the judiciary to seek revenge against RCI for their investigations into Young's work attendance, which indirectly involved her because

19

Martinez was Young's supervisor, and to extort a settlement from RCI."  RCI Defendants' Counterclaim ¶ 22.  As to Mr. Montoya, RCI Defendants allege:  "Upon information and belief, Dennis Montoya actively sanctioned, participated, and encouraged Martinez to file the suit and his conduct was the determining factor to file the claim without any reasonable belief whatsoever in the validity of the allegations of fact or law of the underlying suit.  Upon information and belief, Monotya is maliciously misusing the judicial process to extort a settlement from RCI."  RCI's Third Party Complaint Against Dennis Montoya ¶¶ 21 and 22.

Although the Court has supplemental jurisdiction to entertain the RCI Defendants' counterclaim and Third Party Complaint, the Court declines to do so.  However, having reviewed Plaintiff's pleadings and RCI Defendants' submissions in support of their partial summary judgment motions, the Court does not agree with the RCI Defendants' characterization of Plaintiff's Complaint as frivolous and "utterly devoid of merit."   The fact that Plaintiff did not prevail against the RCI Defendants does not mean Plaintiff's Complaint was frivolous.  Moreover, a Third Party Complaint against Mr. Montoya is also inappropriate under the facts of this case. Accordingly, the RCI Defendants' counterclaim and Third Party Complaint are dismissed without prejudice.  Additionally, the RCI Defendants' Motion to Amend Third Party Complaint and Plaintiff/Counter-Defendant Shelley Martinez' and Third-Party Defendant Dennis W. Montoya's Motion to Stay Proceedings are denied as moot.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that the RCI Defendants' Motion for Partial Summary Judgment on Whether They Are State Actors **[Doc. No. 57]** is denied as moot.

20

**IT IS FURTHER ORDERED** that the RCI Defendants' Motion to Strike Plaintiff's Response to the RCI Defendants' Motion for Partial Summary Judgment on Whether the RCI Defendants' (sic) were State Actors **[Doc. No. 77]** is DENIED.

**IT IS FURTHER ORDERED** that the RCI Defendants' Motion for Partial Summary Judgment on Plaintiff's Equal Protection and 42 U.S.C. § 1981 Claims **[Doc. No. 64]** is GRANTED.

**IT IS FURTHER ORDERED** that Defendants Robert Caswell Investigations, Inc., Robert Casey, Karl Wiese, and Leroy Luceros's Motion to Amend Third-Party Complaint **[Doc. No. 13]** is denied as moot.

**IT IS FURTHER ORDERED** that the RCI Defendants' Counterclaim against Plaintiff/Counter-Defendant Shelley Martinez and the Third Party Complaint against Third-Party Defendant Dennis W. Montoya are dismissed without prejudice.

 **IT IS FURTHER ORDERED** that Plaintiff/Counter-Defendant Shelley Martinez' and Third-Party Defendant Dennis W. Montoya's Partially Unopposed Motion and Memorandum to Stay Proceedings Pending Resolution of Their Motion to Dismiss Counterclaim and Third-Party Complaint **[Doc. No. 56]** is denied as moot.

_____

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**